Good morning. We have three argued cases today, and after we hear argument in the first two of those, we're going to take a recess for about 10 or 15 minutes, and then come back and hear the final case before a slightly different panel. So our first case this morning is number 2012-1159, REMBRANDT DATA v. WESTERN DIGITAL. Mr. Skilton. May I please report? John Skilton, Parkins Coulee, here for the Appellate Rembrandt. Your Honor, this is going to be a lesson for me, and I hope for the Court, in the reading of the specification, because I believe that the answer to the correct definition in the context of the claim is found in the specification to the 342 patent, which is in fact the same as the 241 patent, the same spec. So I'm going to spend a little time on that specification, and I would refer the Court to its publication in the appendix to the brief, which begins at A00071 in our brief. A0071, 4071. In the back of the blue brief? Yes, in the blue brief. And I'll be working with that spec and patent in that 342, which for purposes of faith and instruction, the Court found the issues were the same. I'm a little puzzled. I understand your calculations about the angle and how, I guess you're saying that to get to a situation where the width is less than the length, the angle has to be perhaps 14.3 degrees or less. And that all makes sense, and the calculation, I guess, is correct. But what I don't see is where the specification creates an inconsistency if you read elongated to require greater length and width, because the discussion of the angle is written in terms of would not exceed. So it is possible to be consistent with the would not exceed language and still interpret elongated to require greater length and width. Why is that wrong? We do our best in the brief to apply the math to the figures and show instances, certainly, within the ranges that are expressly tied in the spec together. It's not disparate things we're pulling together. The alpha angle is in the spec as a preferred alternative body. I don't think you're really answering my question. I understand the math. Okay. The language that I'm focusing on, for example, is in column five, line 57, where it says that the taper angle would not exceed the angle A. Right. One can comply with that requirement, would not exceed, and still have greater length and width. And there are ways to make it that would have the reverse, greater width and length. True, but there's nothing that says that it has to be the reverse. We would argue that that is using, of course, the definition that the court selected. And what I would like to address is what I consider to be the correct definition, and that is that it's longer than in the sense of the relative juxtaposition of the parts of the poll. Right, but using the specification to get to that point, you have to also point out, I think, that the district court's construction can't survive. Yes. And the point that Judge Dyke was suggesting, presiding judge, was that there's one way of looking at the angle issue so that it is consistent with and survives under. Well, it's limited in that sense. But it is an embodiment that is – any embodiment where the width exceeds the length is, by that construction, precluded. And therefore, in our mind – Well, what's wrong with that? Is there anything in the specification that says such an interpretation is precluded? Well, it's a matter of doing the math. No, the spec doesn't say that in words. So there's no clear statement precluding that interpretation. No, but there is one allowing the – The other interpretation. It's no greater than is the way the spec reads. And to manufacture, then, the angle section at that alpha angle will result in some iterations with the width exceeding the length. Well, you've succeeded in proving that either of those interpretations could come within the spec. Why should we prefer your interpretation over the alternative? Your Honor, I think that is now enough of what my first argument is on the spec. You're not going to find the answer in the spec? The answer is in the spec. If the Court will bear with me, I'm a little out of order, but I will try to get it immediately to – There is a definition, then, of the – There is no definition. There is no definition. There is something in the spec you're going to point to that clearly says yours is the right answer. Yes. Okay. And I'm looking here at the 342 spec column 9, lines 15 through 22. And this is the relative argument here that I believe means that elongated is in the context of the other two portions. And the word portions make the relationship. These are relational to the portions of the whole. And that is what the Court means in my mind when you read a claim in context, because that same word, portions, appears in Claim 1. Doesn't Claim 25 on its face make clear that elongated is referring to a relationship between length and width? Your Honor, I believe that claim does not preclude the argument I'm making. I believe that the relationship – But isn't it true that in Claim 25 that it is talking about elongated regions as being measured such that there's a relationship between the length and the width? Certainly, that doesn't express it. But, Your Honor, I do submit that when you're talking about the word elongated, to limit it to just one relationship, and that is length to width, is not to give its full play in the context of the claim language and the words. And I focus the Court on the notion that in the context of Claim 1, that word is hinged to the word portion. And that is to say that the front and the transitional and the back portions are related together in the sequence of the spec and in the words of the claim. Well, as the district court said, the patentee simply could have said longer, longer than, then we would know. Your Honor, there – That's true. It's not – It is true. Words can be used that have the same meaning. But when I was impressed somewhat with the argument that I think was in the Western Digital brief that pointed out to us the language that's in Column 9, your same column, down at lines 55, 56, 57, where the patentee is talking about two pieces of structural members in the invention that are related to one another, and he says one might be shorter as an undesirable result, so you want to make the other one longer. And so the patentee, when talking about pieces that were related, as you claim the portion of the elongated portion is related, when the patentee wanted us to know that the word longer should be applying, we used it. And in a very telling way, because absent the arrangement in 26C and B where you make certain one is longer and not shorter, you really have an impairment to the invention, so it's crucially important, right? It is crucially important also to the rats' concept of this invention around the – But when the patentee tells me that he knows how to use longer and shorter when that's what he means for a very important purpose, and he uses them in the patent, but he chooses not to use longer when he's talking about the elongated back member, that tells me that the patentee made an affirmative choice. Your Honor, I respectfully would suggest that the word elongated works just as well as longer. In the dictionary definitions, which the court alluded to, it means longer than. No, no, it means made longer. Made longer than. Made longer than. And the question in that gets into the whole debate about whether made means during manufacture, right? This thing is not made longer by an extrusion process during manufacture, right? It is made not by an extrusion process, but the result is a longer element, which is the point of it. And why do you want a longer element at that part of the whole? Then use the word longer. Otherwise, don't you have an AAI Prince public notice function problem here? I believe the word elongated – again, I sound like a broken record, no pun intended. I believe the word elongated works just as well. When it is in its relational sense, as used in terms of the portions of the bowl each to the other. But if it could mean both, and the public can't figure out which one it's supposed to mean, because the patent teaches in two directions, then what's the answer? The answer, I think, is in the way it's used in the claim, claim one, and in the spec. Where in the spec, other than through the fan-shaped argument that you started with, what else in the spec is helpful to you? Besides, you pointed to column nine, line zero, I don't know, 16, 17. So you've got two data points in the spec, right? And the, of course, drawings, which show the relative lengths in terms of the size. Drawings are a wash. Drawings also show longer than Y. But certainly, you're asking, does it also show my definition? I'm asking you to the points that are home-run winners for you. The points that are home-run winners are that portion of the column that I've identified. And the fan-shape. And they are linked together. The fan-shape is an alternative embodiment. Well, interesting. It's not a preferred embodiment, but it's an embodiment. What do you do with the elongated conductor bars? Those things are described as elongated. The court's precedent makes clear, Your Honor. First of all, they don't say expressly width greater. The drawing seems to suggest. Well, you're going to tell me the court's precedent says the same word can have different meanings. I am, Your Honor. And you want us to endorse that. Your Honor, if this were a word of art or a lexicographer issue or whatever, I'd be less comfortable making that argument if it's used in a very precise sense. But I believe that this sentence can float with the fact. And that is to say the context of elongated in the context of claim one is this relative concept that it's tied together. Your Honor, you're obviously a skilled and well-established attorney in this field. When you have a patent like this, here's the dilemma I'm having. You have a patent like this with a spec and with claims that seem, as Judge Clevenger noted, that seem to go both ways, point in two different directions, could be said to point in two different directions. I appreciate that's not your view, but somebody might have that view, that it points in two different directions. Is there a guide or a policy or a rule in your experience that helps us decide which of those two competing directions we should look? Well, in terms of the nature of this patent, it's a very complex manufacturing set of principles and variations that can be made. And in the context of this claim, in my mind, if you see the functionality of the pole is to hold the majority of the solenoid wrap, and that pole is described in reference to the others, the transitional and the front, as being the part that holds the wrap and therefore elongated, then I think you have a reason, if you're the person reading this patent as one of ordinary skill in the art, to read elongated in context as a portion in relation to the other portions and say, you know, there's a reason here that I ought to be making this one longer than the other two portions. So I say to the court that this is not only a logical reading, it's one that a person of ordinary skill in the art, and we have an expert who said that, it's in the record, can read it and say that is a proper design function. Therefore, I'm reading this in terms of its relationship. My concern would be with your competitors. You have an obligation to make disclosure that's understandable to people who are going to read this and want to compete and design around or improve upon. Is it your view that a competitor looking at this would come out with that understanding? I think that if that person is reading it as one of ordinary skill in the art, he certainly would look, as a matter of one of his design parameters, to having that portion elongated, made longer, however you want to do it. And I think for the reasons that I gave, that he'd read that spec and understand that the essential nature of one of the important design improvements of this toroidal shape was the ability to wrap around that portion, wrap the coil, the solenoid coil, around that portion of the pole. And so the answer is that is good notice, adequate notice, and certainly notice that's within the expressed closures of the patent and doesn't preclude, though it's labeled as preferred, certainly a stated embodiment. It can be in one sentence going back to another. I think you're exceeding your time here. We'll give you two minutes for a vote. Thank you, sir. Mr. Frankel? Mr. Gross, Your Honor. Mr. Gross, okay. May it please the Court, David Gross, on behalf of Seagate, arguing for the defendants. Mr. Frankel has also reserved a brief moment in case something comes up relating to Western Digital. Your Honors, one of the issues that has come out in this oral argument is, from a policy standpoint, what seems to be going on when we're in one of these kind of claim construction debates? When you have an ordinary meaning, such as has more length than width, one looking at the claim elongated can understand, all right, so the ordinary meaning is has more length than width. I look at the specification, that's consistent with it. I understand what you've placed on notice. Their definition, just to be clear, is not a competing ordinary meaning. Their definition is not extended, stretched out, lengthened, made longer. Instead, what they've done is come up with a special definition that has not been used in any other case. And the definition is made longer than any other portion of the magnetic pole. And that special definition actually changes when the word elongated is used to describe conductor bars. Then it's a different definition. And then that special definition changes when you talk about the planar embodiment. And they haven't even come up with words to describe how it works with that embodiment. And once you enter the world of, I'm now going to come up with some, my own creative definition, you're going away from the notice function. And so once you leave ordinary meaning, you have a lot of work to do to show why there's a compelling reason in the specification to change the ordinary meaning, set aside the ordinary meaning, and come up with a special definition that ends up being used in three different ways in the specification. And so it makes a lot of sense from a policy perspective for this court to say, when you have a term that's an ordinary term, elongated, no one here is suggesting it has some hyper-specialized meaning in the art. It's the word elongated. When there is an ordinary meaning that fits, and that when you use it the first time in the specification, it makes sense, has more length and width. When you use it the second time with conductor bars, has more length and width, they can see that works. And then when you use it the third time in describing prior art, the bottom segment of that planar embodiment, has more length and width, it works perfectly. When you're in a situation where the ordinary meaning not only is an ordinary meaning, makes sense, but also when you read the spec, it's perfectly consistent, the competing definition for there to be a real fight on our hands should be an ordinary meaning. Let's assume that everything you say is right, but then let's assume that we had a preferred embodiment and designated as such. That was read out of the claim as a result of this interpretation. What then to do? Let's assume that there is a, I want to make it a harder argument for you, I want to make it a preferred embodiment, and I want it, no question, always read out. It gets more challenging. Then you start to ask the question, all right. How does the court balance? Understood. You've got on your side of the scale an interpretation that's consistent throughout, and it excludes a preferred embodiment. Well, Your Honor, I believe this court has made clear that if you have an ordinary meaning, and here an ordinary meaning, it makes sense, even if the result were excluding a preferred embodiment, it still can be acceptable. You need to look at what the alternative is here. Here the alternative is not another ordinary meaning. The alternative is a specialized definition that actually doesn't work in the specification. So one question you'd ask is, what's the competing definition? Here the competing definition doesn't work. The other question you have. So does this ordinary meaning, because the claim has ordinary meaning as opposed to some known meaning in the art, our general rule that a claim construction that excludes a preferred embodiment is wrong, has a footnote attached to it? I wouldn't say it's wrong, Your Honor. I would say there are situations where a court could say, but there's an ordinary meaning. It makes sense. You've chosen to have a preferred embodiment. It doesn't appear to comply with that meaning. You chose not to draft claims in a manner that covers that preferred embodiment. That was your choice, and we're not going to take an ordinary meaning and distort it and twist it because you've chosen not to claim that preferred embodiment. Mr. Gross, what should we do in Judge Clevenger's hypothetical if it turns out that one of our right clerks comes up with a third definition that actually works both ways? Well, Your Honor, I would recommend against coming up with a third definition because, number one, there's been no evidence below on the third definition. There's been no discussion of the third definition. There's been no argument on the third definition. So that argument has been waived by Rembrandt. So it's not before the court. If there were a third definition, I'd have to know what it is in order to respond. But generally speaking, the court doesn't sui sponsi, pick up definitions. I know that doesn't mean it never does, but there's a good reason for it. That's not going to get lube resolved. Two members of this panel did it. I understand that that happens from time to time, Your Honor, but here— And live to regret it. What I say here, Your Honor, is— I appreciate that. I'm not suggesting it's not an option. It's just there's no reason to do it here when you have an ordinary meaning that works, that's consistent with the specification, and there's no competing construction. To come back to the balance on the scales hypothetical I gave you that was designed to make it tough for you, I would think that you would respond by saying this case, of course, is a little different because we're not dealing with a, quote, preferred embodiment, and not all of the patent-shaped embodiments are read out. So— And, Your Honor, there's— I would think your argument would be a kind of a so what. If the plain, if the ordinary meaning is consistent throughout the patent and it turns out that a handful or more of embodiments may not be included because they wouldn't fall within a dependent claim, it's a sort of a so what. Your Honor, the way I would put it, it is a so what, but what I would say here is they actually have a couple claims in one of the patents that don't have the word elongated. So they chose to have claims that didn't include elongated. It's pretty obvious, draft claims that don't include elongated. If you want to have an invention that doesn't have elongated, go ahead and draft claims, and they have the control to draft claims. Have they drafted a claim which makes clear that elongated is referring to a relationship between length and width? They absolutely have, and my point, Your Honor, is to the extent they're suggesting that somewhere hidden in the specification, if you use what you learned in trigonometry and geometry, and then you go to another discussion and specification, and you pick and choose certain angles, and then you make random assumptions and create an embodiment, it's somehow excluded. If that's a concern, which I don't think it should be, then draft a claim to cover that. But don't torture the word elongated because after you do all this work and make all these assumptions and do your calculations, you think there might be a problem. That's not a reason to distort the ordinary meaning of elongated, which is otherwise perfectly consistent in the specification. In fact, if we move to this, what they're saying is an embodiment that's excluded, I want to be clear that I disagree with the idea that in the specification, there is a discussion of an embodiment that is excluded by the ordinary meaning of elongated as more length than width. Typically, in this case law, what this court would say is, all right, you see this figure, that might be excluded, and that's a concern. That would be your example, Judge Bubba, you have a preferred embodiment. Here, there is no figure. The next thing you might say is, well, you could also have more width than length. Well, if you saw that, now I have a problem from your hypothetical. They don't have that here. Another thing you might say is they don't talk about width and length, but they do talk about dimensions, and they talk about going over one with the width. And if it's 1.2, they don't do that. In fact, when they talk about dimensions, they make it crystal clear, it's .4 to .7, which means the width is shorter than the length. Did you notice that counsel didn't say, of course, when we went over to this other discussion, we brought along the ratio to the tapered embodiment, because the patent teaches a ratio of .4 to .7. That actually, Judge Dyke, is a mistake they make in the math, because if you go through the calculations, they begin with the right ratio, but at the end, suddenly the ratio is irrelevant. And that doesn't work. If you're going to pick from another part of a specification, you should pick the ratio. They say, we don't want to pick the ratio, we want to pick something else, and then we want to pick random angles. And so, that's why I guess I'm going to challenge the idea that, sort of a mathematician looking at this, and believe me, we've been doing a fair number of calculations on search hangers as well, and you realize there's a lot of assumptions they're making that are not in the specification, and there's calculations they're making that don't spring from the specification. And so, we think that here, that what the court has in front of it... The trial judge's interpretation builds in a certain ratio concept. I'm sorry, Your Honor? The trial judge's claim interpretation builds in a certain mathematical ratio concept, doesn't it? The judge did that exactly, Your Honor. What the judge said was, the width should not be greater than the length. That's more length than width. That's a ratio. But there's nothing in the specification to support that particular ratio, is there? Well, Your Honor, what I would say is, in the specification, they were very clear in the specification, the academy is very clear in the specification, that there is a ratio. And the ratio, this is at column 15, lines 54 to 62, it says, a desirable ratio between the width and the length, and I want to point out Judge Blythe's point, that they talk about width and length explicitly, not only in a claim, but also in the specification. A desirable ratio between the width and the length of the yoke arm is about 0.4 to 0.7. So, my point is, in the specification, they make it very clear that you look at a ratio between width and length, and the ratio is 0.4 to 0.7. If the ratio is 0.4, that means the length is more than twice as long as the width. If the ratio is 0.7, the length is still 30% longer than the width, and that's the yoke arm, which includes the back portion. And so, when the judge said the ratio needs to be that the length is longer than the width, or has more length than width, that was perfectly consistent with the example. And what's interesting here, is that's the very example that they reach from to try to take angles and apply over here to the tapering body. And our point is simply, if you're going to start picking and choosing from one part of the specification and importing in another, the elephant in the room is the ratio. You have to bring the ratio as well, and they don't do that in their calculations. And once they try to do that in their calculations, their whole world falls apart. So, since there are not competing ordinary meanings here, we don't see this as a really difficult case for a policy perspective to return to the policy point, because if you have one ordinary meaning that puts the world on notice, and that makes perfect sense and is consistent, and then you have another meaning that the only way you would know it is if you went to their expert declaration that they filed at the very end and their attorney argument. That doesn't serve the notice function. Once you enter the world of rejecting ordinary meaning and doing something special, especially when it doesn't work with each use of the word elongated, you have to have a different one for each one, you're violating the notice function. This court would not say, you never do that. But the court would say, we're going to take a really close look at this fact, and you better be crystal clear in the specification that you're doing something to change the ordinary meaning to put people on notice. And we don't think they've come anywhere close to having enough content and meaning in the specification where you would say, yes, you should reject an ordinary meaning and come up with a specialized meaning. And if there are no further questions, I'll conclude. Thank you, Mr. Gross. Does Mr. Frankel have anything he wants to say? Thank you, Your Honor. Mr. Gross did a great job and nothing else further to say. Okay, thank you. Mr. Skelton, you have two minutes. First, I want to fight harder for the ordinary meaning. In the dictionaries, the court site, elongated is defined in various ways. As she can sing, notes are elongated and given fullness without a quiver. That's one of the examples given. That isn't a manufacturing concept. It's a longer concept. And so it's not fair to say that we are, nor did the court view the meaning that we are pushing as being anything other than an ordinary meaning. And I do suggest that when you have that... She understood you to be pushing made longer than, correct? She understood that as well. Yes, Your Honor. Where you were. I mean, you may be shifting now to someplace that you weren't before. Well, you were on made longer than for fair, as I understood it. We were always, did today, and have always argued the relationship issue that's prompted by the word that I've developed in the argument. And I want to get to a couple of the other points. This is snatching something very in the spec. This is under the description of the preferred embodiments, and it's in context, this alternative embodiment. The taper angle of the tapered back portion of a pole of such embodiments would not exceed the angle alpha of the fan-like transition region. This inventor is specifying a fan-like alternative embodiment, and that is one that can result, and it is in context. It's just after he talks about the constant shape embodiment. He said you can do it with a fan-like embodiment. And, Your Honor, just to put a very specific point on it, that's the difference between what is on page 16 of Seagate's brief, this picture of their device. That's a fan-like alternative embodiment covered by a proper reading, in our view, of that word. Do you have a case that stands for the proposition that the construction of the claim adopted by the district court cannot exclude an embodiment? Well, it cannot exclude. Do you have that case? I do not have that case. I have the case that warns against excluding. But there are cases where a construction has been sustained which excludes an embodiment. I am not aware of that. I'm not saying there aren't, Your Honor. I'm not here to represent this Court's authority on that point, other than to say that... But there is not a case that says you can strike down the claim construction if you determine that it excludes an embodiment. There is a case that says that you should honor prefer to embodiment. Prefer to embodiment. That's right. And this is under the column that's labeled prefer to embodiment. It reads right under that. It's within ten lines or so of the... One of the embodiments is specified. Okay. I think we're out of time. Thank you very much, Mr. Sullivan. Thank you all.